**PROJECT VOTE!, et al., Plaintiffs,**

v.

**OHIO BUREAU OF EMPLOYMENT SERVICES, et al., Defendants.**

**No. C–1–82–905.**

United States District Court, S.D. Ohio, W.D.

Sept. 13, 1982.

James B. Robinson, Cincinnati, Ohio, Christine L. Owens, Americans for Civic Participation, Washington, D.C., for plaintiffs.

Marquette Evans, Asst. Atty. Gen., Bureau of Employment Services, Columbus, Ohio, for defendants.

## OPINION GRANTING TEMPORARY RESTRAINING ORDER

SPIEGEL, District Judge:

This matter came before the Court the 10th of September, 1982 for a hearing on plaintiffs' motion for a temporary restraining order (doc. 2) to restrain defendants from refusing plaintiffs access to the offices of the Ohio Bureau of Employment Services (OBES) for purposes of urging unemployed workers to register to vote and assisting them to register. Because the Court found that irreparable injury to plaintiffs would result in the absence of a temporary restraining order, that there is a substantial likelihood plaintiffs will succeed on the merits at trial, and that a temporary restraining order is in the public interest, we concluded that plaintiffs' motion was well-taken. The Court, therefore, issued a temporary restraining order enjoining defendants from denying plaintiffs access to OBES offices. That order issued, however, subject to certain conditions to ensure that plaintiffs' activities would not interfere with normal business activities and operation of OBES (doc. 7).

Plaintiffs in this action are Americans for Civic Participation, a District of Columbia non-profit corporation exempt under § 501(c)(3) of the Internal Revenue Code; Project Vote, one of the projects of Americans for Civic Participation, a non-partisan voter registration campaign aimed at low-income citizens; and Cincinnati AFL–CIO Labor Council, John Johnson, Emerson Ross, and Marian Spencer, local sponsors of Project Vote! Project Vote! arranges with local boards of elections to have volunteers deputized as registrars. Volunteers, stationed in the waiting rooms of unem-

ployment offices on specified days, talk with persons about voting and assist them to register.

Defendants are the Ohio Bureau of Employment Services (OBES), and Gary Stein, Administrator of OBES. Plaintiffs assert that by letters dated August 5, 1982 and August 6, 1982 to Mr. Stein they requested access to the OBES offices in Cincinnati and Toledo. In two identical letters dated August 13, 1982, Mr. Stein denied this request. Mr. Stein stated in those letters that OBES had a "long-lasting policy" restricting access to OBES offices "for purposes other than those associated with employee relations, unemployment matters and employment services, notwithstanding, the worthiness of the cause" (App. B, D doc. 1).

Attached to plaintiffs' motion (doc. 2) is a preliminary injunction issued the 25th of April, 1980 by Judge Gorman of the Hamilton County Court of Common Pleas (Case No. A–8002440). That injunction, which issued by agreement of the parties, permitted the Revolutionary Red Brigade and the National May Day Committee to enter waiting room areas of OBES offices in Cincinnati for purposes of speaking with unemployed workers, distributing literature, and soliciting signatures. The preliminary injunction was subject to several conditions to prevent disruption of the normal business activities and operation of OBES.

Plaintiffs allege that defendants' actions infringe rights guaranteed to them under the First and Fourteenth Amendments to the United States Constitution. More specifically they allege that defendants' exclusion of plaintiffs from OBES offices violates plaintiffs' rights of free speech, deprives plaintiffs of equal protection of the laws and violates plaintiffs' rights under 42 U.S.C. § 1983.

■ Before granting a preliminary injunction or a temporary restraining order pursuant to Rule 65, Fed.R.Civ.P., the Court must consider the irreparability of harm to the plaintiffs should the injunction not issue, the balance of injury between the parties, the impact of the ruling on the public interest, and the likelihood that plaintiff will succeed on the merits at trial. *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 536–38 (6th Cir.1978). A temporary restraining order may issue only if it appears clearly from specific facts shown by affidavit that immediate irreparable injury will result and if counsel for the moving party certifies to the court efforts made to give notice and the reasons why notice should not be required. Rule 65(b), Fed.R.Civ.P.

Plaintiffs' motion was filed the 3rd of September, 1982 as a motion for a preliminary injunction. The motion states that defendants had been notified by telephone of the filing. Counsel for plaintiffs stated in court that because of the Labor Day holiday, defendants had not received the pleadings by the 8th of September, 1982. At that time, at the request of defendants, plaintiffs asked the Court to consider this motion as one for a temporary restraining order as defendants were without notice. Counsel for both parties stated in court that defendants did not receive the pleadings until the 9th of September, 1982. In light of the representations of counsel for both parties as to the absence of effective notice and the parties' mutual request that we consider plaintiffs' motion as one for a temporary restraining order, the Court reviewed the evidence and the arguments of counsel according to the standard for a temporary restraining order.

■ Plaintiffs filed three affidavits in support of their claim of irreparable injury (docs. 3, 4, 5). We need not consider these affidavits, however, because, as defendants agreed, the loss of First Amendment freedoms for even a minimal period of time is *per se* irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976); *International Society for Krishna Consciousness v. Evans*, 440 F.Supp. 414, 420 (S.D.Ohio 1977). Defendants also agreed in court that the injury to plaintiffs should the temporary restraining order not issue greatly outweighs the possible harm to defendants if the order were issued and that, given the value of in-

creased voter registration, the public interest would be well served by the issuance of a temporary restraining order. The parties agreed that the only question at issue was the likelihood that plaintiffs would succeed at trial on the merits.

Plaintiffs argued that there was precedent for the relief they are seeking. In *Unemployed Workers Union v. Hackett*, 332 F.Supp. 1372 (D.R.I.1971), Judge Pettine issued a preliminary injunction restraining the Rhode Island Department of Employment Security from interfering with plaintiffs' distribution of literature in the state's unemployment compensation offices and consensual, individual discussions with claimants about welfare benefits and the purposes of plaintiff's organization. The United States Court of Appeals for the Second Circuit in *Albany Welfare Rights Organization v. Wyman*, 493 F.2d 1319 (2d Cir.), *cert. denied*, 419 U.S. 838, 95 S.Ct. 66, 42 L.Ed.2d 64 (1974), reversed a district court's denial of a preliminary injunction, finding that a blanket denial to a welfare organization of access to the waiting rooms of a welfare office for the peaceful distribution of leaflets violated the First Amendment rights of the organization.

Defendants contend that the offices of the OBES are not public forums and that, therefore, Mr. Stein's refusal to permit plaintiffs access is not a violation of First Amendment rights. Defendants stated that the proper test for determining whether a particular site is a public forum was enumerated by the United States Supreme Court: "The crucial question is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time." *Grayned v. City of Rockford*, 408 U.S. 104, 116, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222 (1972). Plaintiffs agreed that the *Grayned* test is controlling.

Defendants maintained that Mr. Stein's letter, if read properly, was a prohibition only of speech unrelated to the purposes of the OBES and, therefore, incompatible with OBES' normal activity. OBES agreed to allow the Red Brigade to distribute literature, according to defendants, because their activities were directed at organizing unemployed workers and were, therefore, related to the normal activities of OBES. Voter registration, it was asserted, was unrelated.

■ The Court finds that plaintiffs have raised substantial questions about the public nature of the OBES offices. Not only has the Second Circuit and the District Court of Rhode Island found welfare offices a proper site for First Amendment activity, but the Fifth Circuit has held that a public hospital is a public forum and, therefore, that the hospital's absolute "no solicitation" rule violated the First Amendment. *Dallas Association of Community Organization for Reform Now v. Dallas County Hospital District*, 670 F.2d 629, 630–31 (5th Cir.1982). Furthermore, the United States Supreme Court has held that a public university is a public forum and, therefore, cannot prohibit student groups from using campus facilities for religious purposes. *Widmar v. Vincent*, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981).

■ It is well settled that First Amendment activities in a public forum are subject to reasonable restrictions of time, place, and manner but only if they are content-neutral, serve a significant government interest and leave ample alternative channels for communication. *Consolidated Edison Company v. Public Service Commission*, 447 U.S. 530, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980). Our circuit has stated that such restrictions are constitutionally invalid unless they (1) are not based on content, (2) are not open to arbitrary application, (3) serve a significant governmental interest, (4) are the least restrictive means of serving that interest, and (5) leave open alternative forums for the expression of protected speech. *Hynes v. Metropolitan Government of Nashville and Davidson County*, 667 F.2d 549 (6th Cir.1982), discussing *Heffron v. ISKCON*, 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981).

If plaintiffs succeed in establishing that OBES offices are public forums, then it is likely they may be able to demonstrate that OBES policy fails to meet this standard. Given OBES' agreement to let the Red Brigade distribute literature and the stated exceptions for employment-related matters, the restriction, arguably, is content-based. Further, even if it were found that the restriction is not content-based, plaintiffs might well prevail on the least restrictive means test. For example, OBES agreed to allow the Red Brigade access under certain conditions designed to ensure that OBES could continue to conduct its business without disruption. *See also Hackett, supra,* at 1383–84 for the conditions imposed by Judge Pettine, and *Dallas Association, supra,* at 632–33 for the types of conditions on First Amendment activities in the context of a public hospital which might be constitutionally valid.

The court concluded that there is a likelihood plaintiffs will prevail on the merits and that the temporary restraining order should issue. We recognized the importance of OBES' being able to carry on its usual activities without undue disruption. Because OBES had agreed to the conditions of the preliminary injunction issued by Judge Gorman in the Red Brigade case, we fashioned this order with similar conditions (doc. 7). The order will continue in effect until September 20, 1982 or until an earlier hearing on plaintiffs' motion for a preliminary injunction.

As required by Rule 65(c), Fed.R.Civ.P., the Court has considered whether we should require plaintiffs to post security. Given the nature of Project Vote! and the community reputation of the Cincinnati AFL–CIO Labor Council and the individual plaintiffs in this action, we conclude that no security need be posted.

SO ORDERED.