Bret CAHILL, Plaintiff,

v.

TEXAS WORKFORCE COMMISSION and Mike Sheridan, Executive Director Texas Workforce Commission, Defendants.

No. Civ.A. 1:00–CV–330.

United States District Court,
E.D. Texas,
Beaumont Division.

Aug. 1, 2000.

Bruce Cahill, Beaumont, TX, plaintiff pro se.

Christopher R. Brown, Assistant Attorney General, Austin, TX, for defendant.

## MEMORANDUM OPINION AND ORDER

COBB, District Judge.

Before this court is Plaintiff's Motion for Preliminary Injunction [Dkt. # 8] and the court having reviewed the motion and responses on file is of the opinion that the motion should be DENIED.

The Texas Workforce Commission ("TWC") is operated by the State of Texas. Its basic purpose is to inform the public as to opportunities for employment and other information relevant to employment. Employers are allowed to give out information on employment opportunities. Plaintiff filed this pro se complaint seeking declaratory and injunctive relief. Specifically, he seeks to compel the TWC to post his notices and other information from former employees about their former employers and the jobs offered through the commission. Because the court finds that the TWC dissemination of job information is a nonpublic forum and its restrictions are reasonable and viewpoint neutral, the court finds that plaintiff cannot establish a likelihood of success on the merits and therefore denies the plaintiff's motion.

## BACKGROUND

The TWC is a state agency charged with overseeing and providing workforce development services to employers and job seekers of Texas. For employers, the TWC offers recruiting, retention, training and retraining, and outplacement services as

well as valuable information on labor law and labor market statistics. For job seekers, the TWC offers career development information, job search resources, training programs, and, as appropriate, unemployment benefits. The TWC is part of a local/state network dedicated to developing the workforce of Texas. The network is comprised of the statewide efforts of the Commission coupled with planning and service provision on a regional level by 28 local workforce boards. This network gives customers access to local workforce solutions and statewide services in a single location. Primary services of the TWC and its network partners are funded by federal tax revenue and are generally free to all Texans. In addition to physical bulletin boards at its offices, the TWC provides information to job-seekers over the internet.[1]

The TWC is part of a job-placement system created by the Wagner–Peyser Act. 29 U.S.C. § 49 *et seq.* (also called the National Employment Service Act). The Act permits employers to use governmental resources to recruit employees in parts of the state or in other states, with a low demand for labor to work where demand is high. *See* 20 C.F.R. § 652.3 (listing the minimum requirements for a state labor exchange system). Employers submit "clearance orders," or requests for workers, to the state employment service in their state. A clearance order describes the terms and conditions of the employment offered and details the job requirements. Employers are restricted in the type and content of the information provided and suffer penalties for any misrepresentations. After inspection, clearance orders are forwarded to the Department of Labor and the TWC. Texas employers can post clearance orders through the TWC for distribution in Texas and other states. The TWC also inspects the work-sites to confirm the information in the clearance orders and compliance with labor and other laws.

Plaintiff claims he sent a letter to the TWC on April 11, 2000 which requested the TWC provide plaintiff and other former employees equal access to all bulletin boards, job banks, computer networks and other resources so that former employees could comment on their former employers. Plaintiff also requested that the public be notified of the access. In a letter dated April 20, 2000, Mike Sheridan, the Executive Director advised the plaintiff that the TWC could not accommodate his suggestion because of the potential liability stemming from libelous statements. Plaintiff filed this complaint a month later.

Plaintiff claims a preliminary injunction is justified because he and other former employees suffer irreparable injury to their First Amendment freedoms because of the TWC's viewpoint discrimination. The TWC argues that the collective fora established by the Texas Workforce Commission have created a nonpublic forum in which the exclusion of notices posted by former employees is a reasonable, content-based restriction designed to further the purpose for which the fora have been created.

## PRELIMINARY INJUNCTION STANDARD

■ To obtain a preliminary injunction, a plaintiff must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat that it will suffer irreparable injury absent the injunction; (3) that the threatened injury outweighs any harm the injunction might cause the defendants; and (4) that the injunction will not impair the public interest. *Enrique Bernat F., S.A. v. Guadalajara, Inc.*, 210 F.3d 439, 442 (5th Cir.2000) (citing *Sugar Busters L.L.C. v. Brennan,* 177 F.3d 258, 265 (5th Cir.1999)). If the plaintiff fails to establish any one of these elements, then the motion must be denied.

---

1. *See* Texas Workforce Commission web site at *http://www.twc.state.tx.us.* (visited July 28, 2000).

## ANALYSIS

In *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45–46, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983), the Supreme Court identified three types of fora: (1) the traditional public forum, (2) public forum created by a government designation, and (3) nonpublic forum. A traditional public forum is a place such as a public street or park which "by long tradition or by government fiat [has] been devoted to assembly and debate." *Id.* at 45, 103 S.Ct. 948. A public forum of the second category is created by government designation of a place or channel of communication for use by the public at large.[2] The state is not required to retain the open character of this forum and may impose reasonable time, place and manner restrictions; also, content based prohibitions must be narrowly drawn to effectuate compelling state interests. *Id.* at 45–46, 103 S.Ct. 948. The only real difference between the first two categories, is that the state retains the power to eliminate the second; the standards governing the restriction of speech are the same.

The third category of forum is not a public forum by tradition or designation but a forum reserved for a particular purpose. "In addition to time, place, and manner restrictions, the state may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Id.* at 46, 103 S.Ct. 948. As the Court noted: "the State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." *Id.*

### A. What type of forum is the TWC?

In order to identify the relevant forum, the court must focus on the access sought by the speaker. *See Perry*, 460 U.S. at 45, 103 S.Ct. 948. In *Perry*, the Court determined the relevant forum was the internal mail system of a public school rather than public school property. *Id.* at 44, 103 S.Ct. 948. The Court ‛held that the school's internal mail facility fell into the third category because it was not open to the public although some outside organizations (such as the YMCA or the Cub Scouts) were allowed to use the facilities. Two years later, in *Cornelius v. NAACP Legal Defense and Educ. Fund*, 473 U.S. 788, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985), the NAACP and other legal defense funds sought to participate in a charity drive aimed at federal employees. The Court defined the relevant forum as the charitable fundraising drive as opposed to the government buildings which housed the federal workers. *Id.* at 800, 105 S.Ct. 3439.

■ More recently, the Fifth Circuit outlined two factors to consider in determining whether the State has transformed its property into a designated public forum. *See Doe v. Santa Fe Indep. Sch. Dist.*, 168 F.3d 806, 819 (5th Cir.1999), *aff'd* —— U.S. ——, 120 S.Ct. 2266, 147 L.Ed.2d 295 (2000). The first factor is government intent as indicated by the nature of the property and its compatibility with expressive activity. The second factor is the extend of use granted—a forum may be limited to certain speakers or to discussion of specified subjects. *See Id.* (citing *Cornelius*, 473 U.S. at 802, 105 S.Ct. 3439; *Perry*, 460 U.S. at 46–47, 103 S.Ct. 948; *Estiverne v. Louisiana State Bar Ass'n*, 863 F.2d 371, 378 (5th Cir. 1989)).

■ In the present case, the various services offered by the Texas workforce commission, considered as one for the purposes of this discussion, clearly constitute a nonpublic forum. The sole purpose of the program is to facilitate the dissemination of job opportunities from employers to employees. There is no evidence or argument that the TWC uses its facilities

---

**2.** The second category is also known as a limited public forum. *See Estiverne v. Louisiana State Bar Ass'n*, 863 F.2d 371, 376 (5th Cir.1989).

for any other purpose. Clearly, the TWC has evidenced its intent in this regard by limiting the use of its facilities to people seeking workers or jobs. Thus, the TWC limits the use of its facilities to certain speakers as well as to a particular subject matter. The TWC does not allow general access or indiscriminate use of the forum in question by the general public. *See Cornelius*, 473 U.S. at 802, 105 S.Ct. 3439. The court will not find that a public forum has been created absent clear evidence of intent, nor can the court infer that the state intended to create a public forum when the nature of the property is inconsistent with expressive activity. *Id.* at 803, 105 S.Ct. 3439. Merely creating or sponsoring a method on communication does not create a public forum. *See Estiverne*, 863 F.2d at 377 (holding that the Louisiana State Bar Journal was a nonpublic forum).

### B. Are the Restrictions Reasonable and Viewpoint neutral?

■ Having found that the TWC's employment notification system is a nonpublic forum, the court will now determine whether the exclusion of plaintiff's notices is reasonable and viewpoint neutral. A state may limit access to a nonpublic forum based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral. *Perry*, 460 U.S. at 49, 103 S.Ct. 948; *Cornelius*, 473 U.S. at 800, 105 S.Ct. 3439; *see also Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 682, 118 S.Ct. 1633, 140 L.Ed.2d 875 (1998).

■ The reasonableness of speech restrictions in a nonpublic forum are assessed in light of the purpose of the forum and the surrounding circumstances. *See Cornelius*, 473 U.S. at 809, 105 S.Ct. 3439. When the proposed speech would be disruptive to the forum or would detract from its intended use, restriction of that speech may be considered reasonable. *See Texas v. Knights of the Ku Klux Klan*, 58 F.3d 1075, 1079 (5th Cir.1995) (affirming exclusion of the KKK from participation in Tex-

as' adopt a highway program because of the potential for civil strife and interference with court orders).

In the present case the purpose of the forum provided by the TWC is self evident: it is intended to match job-seekers with employers. It is not intended to provide a forum for former employees to express their views regarding their former employers. In fact, employers can only provide specific limited information in the clearance orders—they are not free to provide opinions on any subject they wish. The information is objective in nature and includes how much the worker will be paid, what benefits are included, and or the condition of the worksite, i.e., outdoors. As noted earlier, the veracity of the clearance orders is checked and the employer could suffer penalties for incorrect information. Further, the forum is not open to all employers as federal regulations prohibit state agencies from posting clearance orders submitted by an employer who is a party to a pending labor dispute. *See* 20 C.F.R. § 652.9(a).

■ While it may be more efficient for the plaintiff's sake to provide him access to the TWC web site and bulletin boards, that action is not mandated by the First Amendment. "The First Amendment does not demand unrestricted access to a nonpublic forum merely because use of that forum may be the most efficient means of delivering the speaker's message." *Cornelius*, 473 U.S. at 809, 105 S.Ct. 3439.

Plaintiff also contends the TWC's exclusion of his notices was impermissible viewpoint discrimination because the expressions of former employees are excluded. "Although a speaker may be excluded from a nonpublic forum if he wishes to address a topic not encompassed within the purpose of the forum, or if he is not a member of the class of speakers for whose especial benefit the forum was created, the government violates the First Amendment when it denies access to a speaker solely to suppress the point of view he espouses on an otherwise includible subject." *Cor-*

*nelius,* 473 U.S. at 806, 105 S.Ct. 3439 (citations omitted). As noted above, the opinions of former employees about their former employers is not an "includible subject."

Nevertheless, discrimination based on the status of the speaker is not viewpoint discrimination. In allowing the school district to restrict the use of its mail system to the elected union only, the Court in *Perry* noted that this was not viewpoint discrimination, but more accurately characterized as based on the status of the respective unions. "Implicit in the concept of the nonpublic forum is the right to make distinctions in access on the basis of subject matter and speaker identity. These distinctions may be impermissible in a public forum but are inherent and inescapable in the process of limiting a nonpublic forum to activities compatible with the intended purpose of the property." *Perry,* 460 U.S. at 49, 103 S.Ct. 948.

█ In the present case, the TWC provides a forum solely to pair job-seekers with employers. Any additional information provided by TWC concerns state-funded programs for job training or labor and employment issues. The only communication which does not come from the state comes from job-seekers who post their resumes and employers who post job notices. All other communication is excluded. This is a content-neutral restriction based on the status of the speaker— not viewpoint discrimination. Plaintiff's argument that exclusion of his proposed message constitutes viewpoint discrimination is therefore without merit.

The main case on which plaintiff relies is both inapplicable and based on old law. In *Project Vote! v. Ohio Bd. of Employment Servs.,* 578 F.Supp. 7 (S.D.Ohio 1982), the district court of Ohio granted a temporary restraining order permitting a voter registration organization to enter the offices of the OBES for the purpose of urging unemployed workers to register to vote. The evidence revealed that another group, the Red Brigade had previously been granted access to the OBES offices to organize unemployed workers. The court reasoned this access had created a public forum in the OBES offices and thus, the content-based restriction OBES sought to impose would be impermissible. The year after *Project Vote!,* the Supreme Court recognized the nonpublic forum in *Perry.* To the extent that *Project Vote!* is still good law, it only stands for the proposition that speech may still be allowed in an area which is not a public forum if that speech does not interfere with the primary activity of the area and it does not infringe upon the rights of a captive audience. *See Low Income People Together, Inc. v. Manning,* 615 F.Supp. 501, 513–14 (N.D.Ohio 1985) (citing *Project Vote!* ). As discussed above, the court finds that Mr. Cahill's notices would clearly interfere with the primary and intended activity of the TWC job placement network.

## CONCLUSION

From the record, it is clear that the TWC's forum for the dissemination of job notices is a nonpublic forum in which the exclusion of notices from former employees is entirely reasonable and viewpoint neutral. While Mr. Cahill may have a helpful suggestion for the TWC, the First Amendment does not mandate that the TWC post notices from former employees about their former employers. It is therefore,

ORDERED, that Plaintiff's Motion for Preliminary Injunction is hereby DENIED.