Jason RATCLIFF, et al., Plaintiffs,

v.

Ernie MOORE, et al., Defendants.

No. 1:05–CV–00582.

United States District Court,
S.D. Ohio,
Western Division.

April 24, 2009.

Jason Ratcliff, Lucasville, OH, pro se.

Alfar Kynwulf, Overpeck, OH, pro se.

Jason Hysell, Lucasville, OH, pro se.

Chris Roy, Lebanon, OH, pro se.

Jeff Weisheit, Leavittsburg, OH, pro se.

Laura D. Wood, Columbus, OH, Mary Anne Reese, Attorney General of Ohio, Cincinnati, OH, for Defendants.

## OPINION AND ORDER

S. ARTHUR SPIEGEL, Senior District Judge.

This matter is before the Court on the Magistrate Judge's October 1, 2008 and

October 15, 2008 Report and Recommendations (docs. 174, 181), Plaintiff's Objections (docs. 180, 185, 193), Defendant's Response (doc. 196), and Plaintiff's Sur Reply (doc. 198). For the reasons stated herein, the Court AFFIRMS the Report and Recommendations, DENIES Plaintiffs' motions for Partial Summary Judgment (docs. 82, 96, 110, 115), motion to Appoint Counsel (doc. 112), motion for a Preliminary Injunction (doc. 81), and Brian Timms' motions to Join (docs. 83, 97), and GRANTS Defendants' Motion to Dismiss (doc. 71) and motion for Partial Summary Judgment (doc. 124).

## I. Background

Plaintiffs, Jason Ratcliff (Southern Ohio Correctional Facility), Darryl Blankenship (Ross Correctional Institution), Jason Hysell (Southern Ohio Correctional Facility), Chris Roy (Marion Correctional Institution), and Jeff Weisheit (Trumbull Correctional Institution), prisoners in the custody of the Ohio Department of Rehabilitation and Correction ("ODRC"), filed this action pursuant to 42 U.S.C. § 1983, alleging, *inter alia*, a failure to accommodate their Asatru religious practices, seeking declaratory judgment, injunctive relief, and monetary recovery (doc. 1). In response, Defendants maintain that such claims and motions should be dismissed as vague, conclusory, and nonjusticiable (doc. 71). On May 16, 2008, the Magistrate Judge entered his Report and Recommendation, recommending that Defendants' motion to dismiss (doc. 71) be granted; Plaintiffs' motions for partial summary judgment (docs. 110, 115) be denied; and Plaintiffs' motion to appoint counsel and certify class (doc. 112) be denied (doc. 144). After this Court referred the matter back to the

Magistrate Judge requesting that he reconsider his May 16, 2008 Report and Recommendation in light of information contained in a letter from Plaintiff's counsel in another case, as well as Plaintiff's objections, the Magistrate Judge withdrew his previous Report and Recommendation and entered a new one dated October 1, 2008 addressing the same motions (doc. 174).

The Magistrate Judge entered an additional Report and Recommendation (doc. 181) on October 15, 2008, addressing Plaintiff Blankenship's motions for injunctive relief (doc. 81) and partial summary judgment (docs. 82, 96); Brian Timms' motions to join (docs. 83, 97); and Defendants' motion for partial summary judgment (doc. 124). Each Report and Recommendation and the objections and responses thereto will be discussed in turn.

## II. October 1, 2008 Report and Recommendation

In his October 1, 2008 Report and Recommendation, the Magistrate Judge first considered Defendants' motion to dismiss Plaintiffs' claims regarding their Asatru religious practices (doc. 174).[1] The Magistrate Judge determined that Plaintiffs' claims should be dismissed, reasoning that each Plaintiff is also a Plaintiff in *Miller, et al. v. Wilkinson, et al.*, Case No. 2:98–cv–275, a previously filed class action lawsuit currently pending in the Eastern Division of this United States District Court, and that Plaintiffs' claims in this case are substantially the same as the claims in *Miller* (doc. 174).

In support of this conclusion, the Magistrate Judge, recognizing the federal courts desire to avoid "duplicative litigation," cited *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Associates, Inc.*, 16 Fed.Appx.

---

1. Plaintiff Blankenship's non-religious denial of recreation claim is excepted from Defendants' motion to dismiss (doc. 71).

433, 437 (6th Cir.2001), noting the "first-filed rule" that the court presiding over the earlier filed action should generally be permitted to proceed to judgment. The Magistrate Judge further acknowledged that "deferral to the earlier filed action is appropriate, only where the litigation is truly duplicative," such that a "determination in one action leaves little or nothing to be determined in the other". *Smith v. Securities and Exchange Comm'n*, 129 F.3d 356, 360 (6th Cir.1997). In considering Plaintiffs' contention that the instant case has some factual differences, the Magistrate Judge concluded that because of the nature of the system wide relief sought in *Miller*, the differences here are of no consequence (*Id.*).

Similarly, the Magistrate Judge denied Plaintiffs' motions to appoint counsel and certify class, and stayed Plaintiffs' claims for damages preserving their right to recover if the *Miller* Court finds a constitutional violation (doc. 174). Citing the standard for a dismissal under Fed. R. Civ. Pro. 12(b)(6), the Magistrate Judge found that the Plaintiffs' allegations with respect to the non-religious claims lack any supporting factual allegations, and simply assert that ODRC's policies unconstitutionally favor Abrahamic religions (Judaism, Christianity, and Islam) to the detriment of non-Abrahamic religions, and that ODRC's "Security Threat Group" designations violate the Constitution (*Id.*). However, as the Magistrate Judge acknowledged, these allegations "do not link with any particular defendant, nor do they include basic information such as: who, what, when or where" (*Id.*).

The Magistrate Judge next considered Plaintiffs' motions for partial summary judgment and concluded that they should be denied (*Id.*). The Magistrate Judge found Plaintiffs' contentions that the ODRC's policies are overbroad and unconstitutionally vague, conclusory, and failed to meet the Supreme Court's "unreasonableness" standard for determining whether prison policies or regulations unconstitutionally infringe prisoners' rights (*Id.*). Therefore, the Magistrate Judge concluded Plaintiff failed to establish that there are no genuine issues of material fact with respect to these claims, and further recommended they be dismissed (doc. 174.).

## A. Plaintiffs' Objections

Plaintiffs filed a timely objection to the Report and Recommendation, primarily reasserting their original claims and arguing that the Magistrate Judge's recommended dismissal is incorrect because, as *Pro Se* Plaintiff's they met the liberal construction requirements under Fed. R. Civ. Pro. 8(a) (doc. 180). The Plaintiffs further aver that the Magistrate Judge erroneously recommended denial of Plaintiffs' two motions for Summary Judgment, arguing that the Magistrate failed to adequately examine the full record and that Plaintiffs established that there are no genuine issues of material fact because the policies in question are not reasonably related to legitimate penological interests (*Id.*). In addition, Plaintiffs argue that because the Magistrate Judge only recommended that their partial summary judgment motions be denied, he did not dismiss their claims, and as such, they should be allowed to proceed (*Id.*). Lastly, in Plaintiffs' supplemental objections to the Report & Recommendation, Plaintiffs argue that dismissal of their allegedly "duplicative" religious claims is incorrect, citing Defendants contradictory positions taken in the *Miller* case and in this Court (doc. 193). Plaintiffs assert that in the interest of fair play and justice, they should be allowed to bring these claims now, in this Court because they are not "entirely duplicative" of those brought in the *Miller* case (*Id.*). On October 14, 2008 when Plaintiffs filed a

motion with the *Miller* Court to present their religious claims in this case, the Defendants responded by arguing that these religious claims should not be litigated in Miller because they are different claims, or Plaintiffs are attempting to add new claims (doc. 193). It appears that Plaintiffs primarily assert that Defendants are intentionally attempting to prevent them from arguing these allegedly new religious claims in either court system and in the interest of justice, should be allowed to continue this litigation to present these claims (*Id.*).

## B. Defendants' Response

Defendants' response to Plaintiffs' objections urge this Court to adopt the Magistrate Judge's Report and Recommendation, arguing that the Magistrate Judge properly distinguished those claims that are appropriate for this case and those that should be stayed or dismissed in order to be litigated in the earlier-filed class action of *Miller* (doc. 196). Asserting that once the claims have been sorted out, as was done by the Magistrate Judge, the claims that remain in this case should be dismissed as vague, generalized, and conclusory (*Id.*). Primarily, Defendants point to Plaintiffs' claims regarding unconstitutional establishment of Abrahamic religions, selective enforcement of the "unauthorized group activity" policy, equal protection, and free speech and political association, contending that they "were devoid of any factual allegations or support" (*Id.*). Citing a recent Sixth Circuit case, Defendants argue that "[I]n the context of a civil rights claim, ... conclusory allegations of unconstitutional conduct without specific factually allegations fail to state a claim." *Harden–Bey v. Rutter,* 524 F.3d 789, 796 (6th Cir.2008), quoting *Lillard v. Shelby Bd. Of Educ.,* 76 F.3d 716, 726 (6th Cir.1996).

## C. Plaintiffs' Reply

The Plaintiffs' reply primarily reasserts their argument that the religious claims should not be dismissed as duplicative of those in the *Miller* case (doc. 198). Plaintiffs further argue that because the Defendants failed to respond to their specific objections regarding their allegedly conflicting positions in this court and in the *Miller* court regarding the Plaintiffs' religious claims this Court should not adopt the Judge's Report and Recommendation (*Id.*).

## D. Discussion

■ The Court finds Plaintiffs' objections misplaced and without merit. First, Plaintiff's objections to the dismissal of their religious accommodations claims are unwarranted because as the Magistrate Judge correctly found, the Plaintiffs' claims in this action are "truly duplicative" of those in an earlier filed class-action involving only minor factual differences. The Defendants' arguments in the *Miller* Court as to the nature of the religious claims in this case are immaterial, and Plaintiffs' objections thereto are vague and speculative at best. This Court agrees with the Magistrate and the Defendants' that notwithstanding the minor differences between the two cases, dismissal is appropriate here because of the "nature of the system-wide relief sought" in *Miller* (doc. 174). Here, because Plaintiffs are all part of the non-opt-out class in the first-filed action (*Miller*) and are represented by counsel in that case, the Plaintiffs would suffer no harm or prejudice in not being allowed to proceed on the same claims in this Court. The Court finds that in the interest of judicial economy and Defendants' ability to formulate a system-wide policy in accommodating such religious beliefs, "the court in which an action was first filed" should resolve all the issues

presented by the separate actions. *Eberle v. Wilkinson*, Case No. 2:03–cv–272, 2008 WL 886138, at 2–3 (S.D.Ohio March 28, 2008) (citing *Smith v. Securities and Exchange Comm'n*, 129 F.3d at 360).

■ This Court further agrees with Defendants' that the non-religious claims remaining are conclusory and generalized (doc. 196). Plaintiffs argument that the Magistrate Judge merely recommended denial of their partial summary judgment motion with regard to certain of these non-religious claims, and therefore they should be allowed to proceed on such claims is misplaced (doc. 198). In the Report and Recommendation the Magistrate Judge recommended dismissal of all "non-religious" claims, which includes all such non-religious claims regarding ODRC's policies on recognition of name changes and work proscriptions, stating that "the allegations in this category fail to state a claim" and should be dismissed (*Id.*). The Court agrees that such claims lack any factual foundation or the necessary allegations to support the claims, and therefore, fail to state a claim upon which relief can be granted and should be dismissed.

### III. October 15, 2008 Report and Recommendation

The Magistrate Judge's second Report and Recommendation before this Court addressed the remaining claims that are not considered duplicative of those presented in *Miller*, namely, Plaintiff Blankenship's 42 U.S.C. § 1983 action, seeking injunctive, declaratory, and monetary relief against several state prison officials and employees for alleged violations of his First, Eighth, and Fourteenth Amendment rights (doc. 181).

The Magistrate Judge first considered Plaintiff's motion for a preliminary injunction requiring Defendants to permit him to possess excess legal materials within his cell and concluded that the motion be denied (doc. 181). In so concluding, the Magistrate Judge properly recognized the factors to be balanced in determining whether to issue a temporary restraining order:

1. Whether the party seeking the injunction has shown a substantial likelihood of success on the merits;

2. Whether the party seeking the injunction will suffer irreparable harm absent the injunction;

3. Whether an injunction will cause others to suffer substantial harm; and

4. Whether the public interest would be served by a preliminary injunction.

(doc. 181, citing *U.S. v. Bayshore Associates, Inc.*, 934 F.2d 1391, 1398 (6th Cir. 1991)). In balancing these factors, the Magistrate Judge found that Plaintiff failed to allege facts indicating a substantial likelihood of success on the merits or that he would suffer irreparable harm absent a preliminary injunction, and that monetary or economic harm alone does not constitute such harm (*Id.*). Additionally, the Magistrate concluded that the purpose of a preliminary injunction is preserving the status quo, and in this case, such a purpose would not be served because Plaintiff presently seeks an Order from the Court requiring Defendants to affirmatively correct constitutional deficiencies yet to be proven, and such relief is beyond the scope and purpose of a preliminary injunction (*Id.*).

The Magistrate Judge next considered Plaintiff's motion for partial summary judgment in order to prevent Ross Correctional Institution (RCI) employees from enforcing ODRC excess legal materials policy, and concluded it should be denied because Plaintiff cannot show with speci-

ficity how his constitutional rights have been impinged by RCI's policy (*Id.*). In support of this motion, Plaintiff argued that a prison regulation restricting access to excess legal materials once every 30 days is unconstitutional because he is hindered in his legal research and ability to litigate his own case as well as another inmate, Mr. Mann's case (doc. 82). Plaintiff argued that because other RCI policies exempt the 2.4 cubic foot space in-cell property storage limits for some property, the policy limiting his storage space for legal materials is unfair (*Id.*). Plaintiff further argued that because he is a Plaintiff in this case and two other pending cases, and is helping Mr. Mann in his lawsuit, he needs to be free from the excess legal materials policy (*Id.*). Defendants challenged this motion however, asserting that there are genuine issues of material fact as to whether Plaintiff was denied access to the court and whether the policy was related to a legitimate penological interest (doc. 181).

The Magistrate Judge, applying the proper summary judgment standard of review, herein incorporated, considered each of these arguments and agreed with the Defendants, concluding that the Plaintiff must demonstrate an actual injury in order to succeed on his constitutional violation claim, and has failed to do so here because he is allowed access to his legal locker box and his cell locker box whenever necessary for litigation (doc. 181). Moreover, the Magistrate Judge concluded that because Plaintiff is represented by counsel in the other two lawsuits, his ability to pursue litigation is not hindered by his limited access to in-cell storage of his litigation materials (*Id.*). Finally, the Magistrate concluded that it is against ODRC policy to possess the legal materials of another inmate, and as such, the Plaintiff is not injured by his inability to possess these materials in excess of his permitted in-cell legal materials (*Id.*).

Next, the Magistrate Judge considered the parties' cross motions for summary judgment on Plaintiff's Eighth Amendment denial of exercise claim (*Id.*). Plaintiff Blankenship alleged that in 2004 he was required to remain in his cell and was denied recreation, absent medical justification (doc. 13). The Magistrate Judge correctly cited the rule regarding cruel and unusual punishment in violation of the Eighth Amendment, as involving prison conditions that constitute the "wanton and unnecessary infliction of pain." *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). In this case, where the alleged violation involves the deprivation of access to exercise or recreation, the inmate must show that the prison officials acted with deliberate indifference requiring proof that the official was "subjectively aware" of the risk of harm to the inmate. *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). With regard to this claim, the Magistrate Judge found that Plaintiff failed to prove or argue that any Defendant acted deliberately indifferent to his health or safety (doc. 181). Here, Plaintiff voluntarily went on a religious hunger strike and he therefore requested a medical lay-in, requiring him to remain in his current cell placement and wear a red medical bracelet or "red band," identifying the inmate as medically restricted and not permitted to or forced to work, exercise, or recreate (*Id.*). The Magistrate Judge further found that it is the prison's policy that when the medical restriction expires, the inmate bears the responsibility of getting the red band removed (*Id.*). The Magistrate Judge found that the record indicated Plaintiff continued his religiously motivated hunger strike and further indicated that he would refuse medical treatment when the Prison medical staff indicated

that he needed additional medical evaluation (*Id.*). The record indicates that after July 20, 2004, the first time Plaintiff complained of his medical cell isolation was on September 14, 2004, at which time his red band was removed, making him re-eligible for normal activity (*Id.*).

The Defendants asserted and the Magistrate Judge agreed, that any failure on the part of the prison medical official to remove the band was "at most [an] inadvertent oversight and not deliberate indifference" (doc. 181). The Magistrate Judge, concluded that Defendants were entitled to qualified immunity because Plaintiff had not shown either a constitutional violation nor that what Defendants did was "objectively unreasonable" in light of clearly established law. *See Dickerson v. McClellan,* 101 F.3d 1151, 1157–1158 (6th Cir. 1996). Therefore, the Magistrate Judge recommended summary judgment in favor of Defendants on Plaintiff's Eighth Amendment violation claim (*Id.*).

Lastly, the Magistrate Judge considered Brian Timms' motions to join in Plaintiff Blankenship's denial of exercise claim and concluded that his motion should be denied (*Id.*). The Magistrate Judge correctly noted that if summary judgment is entered in favor of Defendants on Plaintiff's denial of exercise claim, Timms' motion may be denied as moot (*Id.*). Notwithstanding, however, the Magistrate Judge considered Timms' motion on the merits and concluded that it should be denied because it fails the "same transaction or occurrence" standard set forward in Fed. R. Civ. Pro. 20(a)(1), governing Joinder (*Id.*). Citing *McCormick v. Mays,* 124 F.R.D. 164 (S.D.Ohio 1988), the Judge noted that even though the terms "transaction or occurrence" are given broad and liberal interpretation, "mere factual similarity is not sufficient to compel joinder" (*Id.*). Here, because Plaintiff Blankenship's claim arises out of a 2004 incident in which his alleged injury arose out of improper operation of medical lay-in practice, while Timms' alleged injury arises out of a 2005 incident involving a properly operated medical lay-in, the Magistrate concluded that "the difference between parties, time frames, and circumstances makes joinder improper under Rule 20" (doc. 181).

## A. Plaintiff's Objections

Plaintiff Blankenship objects to the Magistrate Judge's Report and Recommendation, asserting first, with respect to his denied access to legal materials claim, that in denying Plaintiff's motions for injunctive relief and partial summary judgment, the Magistrate Judge ignored Plaintiff's sworn testimony and relied on Defendants' allegedly untruthful claims as to the dates and times the Plaintiff was allowed access to his legal materials (doc. 185). Plaintiff essentially claims that his legal materials should be exempt from the prison policy limiting property stored in cells to 2.4 cubic feet (*Id.*).

Next, Plaintiff objects to the Judge's finding that his motion for summary judgment on his denial of exercise and recreation claim should be denied, arguing that he did not fail to return to the infirmary to have his medical idle status removed, and that it was not within his control or responsibility to do so (*Id.*). Plaintiff further asserts that the Defendants were not merely negligent in failing to remove his medical idle status, rather it was a deliberate attempt to keep him on such status to "frustrate legal action" (*Id.*). Lastly, Plaintiff argues that the Magistrate Judge ignored the *Wilson* Court's finding that the deprivation of exercise can rise to the level of cruel and unusual punishment, and that the prison's policy denying medical

idle status to inmates exercise without regard to the specific medical condition of each, is unconstitutional (*Id.*).

## B. Defendants' Response

Defendants respond to Plaintiff's objections by re-arguing that they presented evidence proving that Plaintiff was allowed access to legal materials at least once every 30 days and more often if necessary (doc. 196). Defendants further argue that the Magistrate Judge correctly found that Plaintiff failed to demonstrate an actual injury or any violation of a constitutional right and therefore summary judgment for the Defendants is proper (*Id.*).

Next, Defendants reply to Plaintiff's objection with regard to his denial of exercise claim, primarily urging this Court to adopt the Magistrate Judge's Report and Recommendation, and grant Defendants' motion for summary judgment (*Id.*). Defendants argue that because Plaintiff was put on medical idle status due to his voluntary hunger strikes, and his status was further prolonged as a direct result of such strikes, it was his responsibility to see that his status was removed and he did not fulfill that responsibility until September 14, 2004, at which time his medical idle status was in fact removed (*Id.*). Defendants assert that Plaintiff has failed to provide any evidence contradicting these facts, and that any inconvenience created was by his own making, unattributable to any deliberate indifference on their part (*Id.*).

## C. Plaintiff's Reply

Plaintiffs reply by again asserting that the Defendants failed to respond to the Plaintiffs' objections to the recommended dismissal of the unconstitutional ODRC policies (doc. 198). Plaintiff further argues that the record reflects Defendants were fully aware of his medical idle status and still "deliberately" failed to take him off such status as a "ruse" to attempt to persuade the courts that Plaintiff should not be eligible for religious work proscription because such medical idle status prohibited him from working (doc. 198).

## D. Discussion

■ After thoroughly reviewing this matter, the Court finds Plaintiff's objections without merit. Regarding Plaintiff Blankenship's denial of access claim, the Magistrate Judge correctly found that genuine issues of material fact as to whether Blankenship was denied access to the court as a result of the excess legal materials policy, and as to whether the regulation is reasonably related to a legitimate penological interest (doc. 181). Therefore, Plaintiff is not therefore entitled to summary judgment on this claim.

■ Further, Plaintiff's objections to the Report and Recommendation regarding his denial of exercise claim are unfounded. As both the Magistrate Judge and Defendants' pointed out, Plaintiff voluntarily engaged in religious hunger strikes, was put on medical idle status because of said hunger strikes, refused medical treatment and continued hunger strikes, all of which resulted in extension of his medical idle status (*Id.*). The record makes clear Plaintiff's voluntary involvement in the activities in which resulted in his medical idle status to begin with, and any deprivation of exercise rights was not attributable to any "deliberate indifference" on the part of the Defendants as evidenced by their expedient removal of Plaintiff's medical band once notified of his eligibility for such removal (*Id.*). The De-

fendants argued and this Court agrees, that they should not be held responsible for Plaintiff's choice to embark on hunger strikes, to refuse treatment, or to fail to report to the medical department for removal of medical band and medical idle status (doc. 196). Furthermore, the Court agrees with the Magistrate Judge that Defendants are entitled to qualified immunity on this claim because Plaintiff has not shown either a constitutional violation nor that what Defendants did was "objectively unreasonable" in light of clearly established law. *See Dickerson v. McClellan*, 101 F.3d 1151, 1157–1158 (6th Cir.1996).

■ This Court further agrees that Brian Timms' motion to Join should be denied, because "the difference between parties, and time frames and circumstances makes joinder improper" (doc. 181). This Court finds the Magistrate Judge's Report and Recommendation to be well-reasoned and correct. Plaintiff's denial of exercise claim should therefore be dismissed and the only remaining issue in this case is Plaintiff Blankenship's claim alleging an unconstitutional ODRC policy regarding excess legal materials.

## IV. Conclusion

Having reviewed this matter *de novo* pursuant to 28 U.S.C. § 636(b), the Court ADOPTS the Magistrate Judge's Report and Recommendations in their entirety (docs. 174, 181), and thus the Court:

1) GRANTS Defendants' motion to dismiss (doc. 71), and thus DISMISSES Plaintiffs' claims for injunctive and declaratory relief concerning religious accommodation, but STAYS any determination of damages pending the resolution of Plaintiffs' religious accommodation claims in *Miller;* and DISMISSES Plaintiffs' non-religious accommodations claims pursuant to Fed.R.Civ.P. 12(b)(6);

2) DENIES Plaintiffs' Motions for partial summary judgment (docs. 110, 115);

3) DENIES Plaintiffs' Motion to appoint counsel and to certify class (doc. 112);

4) DENIES Plaintiff Blankenship's Motions for Preliminary Injunction (doc. 81), and Motions for Partial Summary Judgment (docs. 82, 96);

5) DENIES Brian Timms' Motions to Join (docs. 83, 97);

6) GRANTS Defendants' Motion for Partial Summary Judgment on Plaintiff Blankenship's denial of exercise claim (doc. 124).

Therefore, the only issue remaining in this case is Plaintiff Blankenship's claim of denial of access to the courts due to an allegedly unconstitutional ODRC policy regarding excess legal materials.

Further, the Court DECLINES to issue a certificate of appealability because the Court does not find that Petitioner has demonstrated "that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'" *Barefoot v. Estelle*, 463 U.S. 880, 893 & n. 4, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983) (internal quotations omitted). Finally, pursuant to 28 U.S.C. § 1915(a)(3), this Court CERTIFIES that any appeal of this Order will not be taken in good faith, and any application to appeal *in forma pauperis* will be denied.

SO ORDERED.

**REPORT AND RECOMMENDATION [1] THAT DEFENDANTS' MOTION TO DISMISS (Doc. 71) BE GRANTED; PLAINTIFFS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT BE DENIED (Docs. 110 & 115); AND PLAINTIFFS' MOTION TO APPOINT COUNSEL AND TO CERTIFY CLASS (Doc. 112) BE DENIED**

TIMOTHY S. BLACK, United States Magistrate Judge.

On May 16, 2008, the undersigned issued a Report and Recommendation (R & R) (Doc. 141) recommending the granting of Defendants' motion to dismiss with respect to Plaintiffs' claims for injunctive and declaratory relief concerning religious accommodation (Doc. 71). The undersigned further recommended that any determination of damages with respect to those claims be stayed, pending the resolution of Plaintiffs' religious accommodation claims set forth in a previously filed class action—*Miller, et al. v. Wilkinson, et al.,* Case No. 2:98–cv–275—which is pending in the Eastern Division of this United States District Court.[2]

Plaintiffs filed objections to the R & R asserting that dismissal of all of their claims was improper, and that only their claims relating to Asatru religious accommodation were duplicative of the claims in *Miller.* (Docs. 149, 150.) Additionally, on June 11, 2008, David Goldberger, Esq., counsel for the Plaintiffs in *Miller,* submitted a letter to Judge Spiegel stating that while there are some claims in the instant case that are duplicative of those in *Miller,* there remain issues raised in the instant case that are not duplicative of *Miller.*[3] Thereafter, on July 9, 2008, Judge Spiegel issued an Order (Doc. 166) referring the matter back to the undersigned for reconsideration in light of the information contained in the letter from David Goldberger, Esq., as well as the objections filed by the Plaintiffs.[4]

Accordingly, upon careful consideration, the previous R & R (Doc. 144) is hereby withdrawn and the undersigned herein enters the following Report and Recommendation clarifying and modifying the previous one.

**I.**

Plaintiffs, inmates in the custody of the Ohio Department of Rehabilitation and Correction ("ODRC"), bring this action pursuant to 42 U.S.C. § 1983, alleging, *inter alia,* a failure to accommodate their Asatru religious practices. (Doc. 13.) Plaintiffs include inmates Jason Ratcliff (Southern Ohio Correctional Facility), Darryl Blankenship (Ross Correctional Institution), Jason Hysell (Southern Ohio Correctional Facility), Chris Roy (Marion

---

1. Attached is a NOTICE to the parties regarding objections to this Report and Recommendation.

2. The R & R also recommended that Plaintiffs' motions for partial summary judgement (Docs. 110, 115) and motion to appoint counsel and motion to certify class (Doc. 112) should be denied.

3. The undersigned addresses these claims which are not duplicative of those in *Miller* at pp. 895–96 of this R & R (and in footnotes 6 and 7 on page 893).

4. Additionally, on July 14, 2008, in light of Judge Spiegel's Order (Doc. 166), as well as a recent decision by the Sixth Circuit, Defendants filed a motion for leave to supplement the record (Doc. 167). The undersigned has considered the matters set forth in that motion in preparing today's R & R, and, accordingly, for good cause shown, the Court grants Defendants' *motion for leave to supplement* the record (Doc. 167) by separate Order entered today.

Correctional Institution), and Jeff Weisheit (Trumbull Correctional Institution). All of these Plaintiffs are also plaintiffs in a previously filed class action—*Miller, et al. v. Wilkinson, et al.*, Case No. 2:98–cv–275—which is pending in the Eastern Division of this United States District Court.

The Defendants in the present action, as well as in *Miller*, are prison officials. In the present case, Plaintiffs seek declaratory judgment, injunctive relief, and monetary recovery. (Doc. 1, pp. 15–21).

## BACKGROUND AND FACTS

Plaintiffs' amended complaint, asserts, *inter alia*, the following claims:

- The right to possess and wear a Thor's Hammer
- The right to possess Rune chips
- The right to purchase and possess a drinking horn
- The right to a work proscription on religious holy days
- The right to showings of Asatru videos
- The right to availability of Asatru religious books in the chapel & /or library
- The right to establishment of Asatru study groups
- The right to purchase and possess the "Satanic Bible"
- The right to authorization of the Asatru religion and its literature
- The right to having the requested items not be designated as Security Threat Group contraband

(*See* Doc. 16.)

Similarly, Plaintiffs' claims in the *Miller* case, as outlined by Plaintiffs' class counsel, acknowledge and define the class issues as follows:

- Recognition of Asatru as a bonafide religion and it not being classified by ODRC as a Security Threat Group

- Permission to wear the religious medallion commonly known as the Thor's hammer around the neck on a chain or cord
- Permission to possess a rune set and bag with instruction book
- Permission to possess small statutes of Asatru gods and goddesses
- Permission to possess Asatru religious books and religious literature
- Permission to possess an Asatru drinking horn
- Permission to have access to Asatru religious literature in prison libraries
- Permission to possess an Asatru altar
- Permission to possess an Asatru altar cloth
- Permission to possess an 18" ritual Thor's hammer
- Permission to possess a Gandr staff (a wooden staff with the runic alphabet)
- Permission to possess an Asatru Sax (sword) made of wood or strong cardboard
- Permission to possess an Asatru evergreen twig for ceremonial use
- Permission to use a non-alcoholic mead substitute for ritual purposes
- Permission to possess an oath ring and/or sun wheel for ritual purposes
- Permission to possess a casting cloth for religious use
- Permission to possess a ritual bowl known as a blot bowl
- Permission to have access to ritual candles
- Permission to participate in group worship and group study on the same basis as adherents to other religions
- Permission to recognize Asatru holy days and participate in feasts on such days

- Permission to use their religious names
- Permission to grow long hair or shave their heads consistent with their particular stages of religious observance.

(*See* Doc. 71, Ex. B, Proposed Issues for Settlement Letter, dated December 19, 2006).

Here, the Plaintiffs in this case are named plaintiffs and members of the class in *Miller*, which is a non-opt out class certified pursuant to Fed.R.Civ.P. 23(b)(2). The *Miller* class is defined as "all present and future inmates confined in any institution administered by ODRC who are adherents of the Asatru religion." *See Miller, et al. v. Wilkinson, et al.*, Opinion and Order, Doc. 101. The Plaintiffs in this case are seeking injunctive relief based on the same claims they have made in *Miller*. Defendants therefore assert that Plaintiffs' Asatru religious accommodation claims for declaratory and injunctive relief in this case should be dismissed, and that their claims for damages should be stayed pending the resolution of *Miller*.

Plaintiffs' amended complaint also contains additional allegations,[5] including claims that the ODRC unconstitutionally establishes Abrahamic religions (Judaism, Christianity, and Islam) as favored or preferred religions to the detriment of non-Abrahamic religions, and that ODRC's rules and policies prohibiting "unauthorized group activity" are selectively enforced against white inmates to suppress and punish disfavored racial, religious and political beliefs. Plaintiffs also assert that the ODRC's Security Threat Group designations violate the Constitution.[6] In re-

sponse, Defendants maintain that such claims should be dismissed as vague, conclusory, and non justiciable.

Now before the Court is Defendants' motion to dismiss Plaintiffs' claims for failure to accommodate their Asatru religious practices. (Doc. 17).[7] Also before the Court are Plaintiffs' motions for partial summary judgment (Docs. 110, 115) and Plaintiffs' motion to certify class and appoint class counsel (Doc. 112). Each motion will be addressed in turn.

## DISCUSSION

### A. Plaintiffs' Asatru Religious Accommodation Claims Should Be Dismissed.

■ The United States Court of Appeals for the Sixth Circuit has recognized that federal courts should seek to avoid "duplicative litigation." *Smith v. Securities and Exchange Comm'n*, 129 F.3d 356, 360 (6th Cir.1997) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)). Where duplicative federal actions are pending, a federal court may, in the exercise of its discretion, stay one of the actions, permit both actions to proceed, or enjoin parties from proceeding in one of those actions. *Id.*

■ "In weighing these three options, courts often proceed ... under the rule of thumb that the entire action should be decided by the court in which an action was first filed." *Id.; see also Manual for Complex Litigation (Fourth)*, § 21.42 (2004) ("The judges involved [in parallel

---

5. *See* footnote 3, *supra,* at p. 891.

6. The claim of Plaintiffs Ratcliff and Blankenship concerning the imposition of medical co-payments (which Mr. Goldberger references in his letter to Judge Spiegel) and the claim of Plaintiff Blankenship regarding denial of ac-

cess to the courts were dismissed on October 19, 2005. (*See* Doc. 13.)

7. The non-religious denial of recreation claim of Plaintiff Blankenship is excepted from Defendants' motion to dismiss. (*See* Doc. 13–1, pp. 3–4; Doc. 1 ¶ 29.)

federal litigation] should coordinate to avoid undue burden, expense, and conflict"). This "first-filed rule" recognizes that the court presiding over the earlier filed action should generally be permitted to proceed to judgment. *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Associates, Inc.,* 16 Fed.Appx. 433, 437 (6th Cir.2001). This deference is particularly warranted where the earlier filed action has been certified as a class action and addresses state-wide prison policies:

> To allow two or more district [court] judges to issue directions to prison officials simultaneously would be to create ... an "inefficient" situation, fraught with potential for inconsistency, confusion, and unnecessary expense.

*Groseclose v. Dutton,* 829 F.2d 581, 584 (6th Cir.1987); *see also Townsend v. Vasbinder,* 2007 WL 4557715 (E.D.Mich. Dec.19, 2007).

■ Deferral to an earlier filed action is appropriate, however, only where the litigation is truly duplicative, *i.e.,* " 'materially on all fours with the other [litigation and having] such an identity that a determination in one action leaves little or nothing to be determined in the other.' " *Smith v. Securities and Exchange Comm'n,* 129 F.3d at 360 (quoting *Congress Credit Corp. v. AJC Int'l, Inc.,* 42 F.3d 686, 689 (1st Cir.1994)).

Here, Plaintiffs' Asatru religious claims for injunctive and declaratory relief are properly dismissed, and their claims for damages should be stayed pending the outcome of the *Miller* class action, because their claims for religious accommodation in the instant case are the same as their claims in *Miller. See Johnson v. O'Donnell,* 2001 WL 34372892, at *6–7 (W.D.Wis. Aug.24, 2001) (case stayed as to the merits of the inmates' claims concerning prison conditions because they were members of

a pending class action in which those same claims were already being considered).

Although Plaintiffs contend that the instant case has some factual differences and different named Defendants, the undersigned agrees with Defendants that such differences are of no consequence because of the nature of the system-wide relief sought in *Miller. See Eberle v. Wilkinson,* Case No. 2:03–cv–272, 2008 WL 886138, at *2–3 (S.D.Ohio March 28, 2008) (the trial judge characterized *Miller* as addressing the "department's system-wide policy" and therefore concluded "that the claims asserted by plaintiff Blankenship in this action [*Eberle v. Wilkinson* ] are subsumed in the class claims asserted in *Miller* and that the claims asserted by him in this action [*Eberle v. Wilkinson* ] are truly duplicative of the claims asserted by the class in *Miller."*). Further, as noted above, *Miller* involves class claims seeking system-wide relief for a non-opt-out class of plaintiffs, including all Plaintiffs in this case.

Accordingly, under these circumstances, and in consideration of judicial economy and of the parties' legitimate interest in avoiding undue burden and expense, Plaintiffs' ten Asatru religious claims for injunctive and declaratory relief, as delineated above, should be dismissed because their requests for relief are being addressed in the *Miller* case. *See Eberle, supra,* 2008 WL 886138, at *4. Furthermore, Plaintiffs' claims for damages in this case should be stayed. As noted by Defendants, by issuing such a stay, this Court will preserve Plaintiffs' right to recover damages in the event the Court finds a violation of their constitutional rights in *Miller.*

Furthermore, for the same reasons stated herein, Plaintiffs' motion to appoint counsel and motion to certify class (Doc. 112) should also be denied. Plaintiffs have filed these motions notwithstanding that

they are members of the certified class in *Miller* and are represented by counsel in that case. There is no need to certify a class nor to appoint counsel in this case as the claims in this case are duplicative of the class claims in *Miller*. *See Smith, supra,* 129 F.3d at 360.

### B. Plaintiffs' Non–Religious Accommodations Claims Should Also Be Dismissed.

As noted above, Plaintiffs' amended complaint further asserts that the ODRC unconstitutionally establishes Abrahamic religion (Judaism, Christianity, and Islam) as favored or preferred religions to the detriment of non-Abrahamic religions, and that ODRC's rules and policies prohibiting "unauthorized group activity" are selectively enforced against white inmates to suppress and punish disfavored racial, religious and political beliefs. Plaintiffs also assert that the ODRC's Security Threat Group designations violate the Constitution.

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R.Civ.P. 12(b)(6). To avoid dismissal for failure to state a claim for relief, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). While the plaintiff need not plead specific facts, his statement must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (citations omitted).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94

S.Ct. 1683, 40 L.Ed.2d 90 (1974); *see also Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). In *Twombly,* the Supreme Court explained that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly,* 127 S.Ct. at 1969. Nevertheless, the plaintiff's ground for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965; *see also Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *Lewis v. ACB Bus. Servs., Inc.,* 135 F.3d 389, 405–06 (6th Cir.1998) ("court need not accept as true legal conclusions or unwarranted factual inferences"). The complaint "must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Weiner v. Klais and Co., Inc.,* 108 F.3d 86, 88 (6th Cir.1997) (citing *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir. 1993)). That is, the "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly,* 127 S.Ct. at 1965 (citations omitted). Thus, while the complaint need not contain "heightened fact pleading of specifics," it must provide "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Twombly,* 127 S.Ct. at 1974. Moreover, "[i]n the context of a civil rights claim, ... conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim." *Harden–Bey v. Rutter,* 524 F.3d 789, 796 (6th Cir.2008); quoting *Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716, 726 (6th Cir.1996).

Here, the allegations contained in Plaintiffs' complaint with respect to the non-religious claims lack any factual allegations in support of the claims. Instead, Plaintiffs simply assert that such ODRC polices are unconstitutional and selectively enforced based on race and/or religion, without reference to specific factual allegations and/or circumstances surrounding the alleged constitutional infringements. As noted by Defendants, Plaintiffs' allegations do not link with any particular Defendant, nor do they include basic information such as: who, what, when or where. Accordingly, upon careful review, the undersigned finds that the allegations in this category fail to state a claim under Fed.R.Civ.P. 12(b)(6), and, therefore, recommends that they be dismissed.

### C. Plaintiffs' Motions For Partial Summary Judgment (Docs. 110, 115) Should Be Denied.

Plaintiffs assert that they are entitled to summary judgment on their claims that ODRC's policies regarding recognition of names changes and work proscriptions are overbroad and unconstitutionally vague and that ODRC's policies regarding "unauthorized group activity" are likewise unconstitutional. (See Docs. 110, 115.).

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Under Federal Rule of Civil Procedure 56(c), a grant of summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue of material fact and [that] the moving party is entitled to judgment as a matter of law." Satterfield v. Tennessee, 295 F.3d 611, 615 (6th Cir. 2002). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. Satterfield, 295 F.3d at 615; Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Little Caesar Enterprises, Inc. v. OPPCO, LLC, 219 F.3d 547, 551 (6th Cir.2000).

 To ensure that the courts accord prison officials the appropriate deference in handling the problems of prison administration, the Supreme Court has formulated a "reasonableness" test for determining whether prison policies or regulations unconstitutionally infringe prisoners' rights. O'Lone, 482 U.S. at 349, 107 S.Ct. 2400. The policies or regulations will be considered valid even if they impinge on prisoners' constitutional rights as long as they are "reasonably related to legitimate penological interests." Turner, 482 U.S. at 89, 107 S.Ct. 2254; see also O'Lone, 482 U.S. at 349, 107 S.Ct. 2400.

Here, Plaintiffs' motions contain only conclusory statements that the above referenced polices violate their rights under the First and Fourteenth Amendments. Furthermore, Plaintiffs do not provide any evidence or argument that the policies in question are unreasonably related to legitimate penological interests. Thus, Plaintiffs have failed to establish that there are no genuine issues as to any material fact with respect to these claims, and that the they are entitled to judgment as a matter of law. Based upon the foregoing, the undersigned finds that Plaintiffs' motions (Docs. 110, 115) are not well-taken and recommends that they be denied.

## CONCLUSION

Accordingly, it is therefore **RECOMMENDED** that Defendants' motion to dismiss (Doc. 71) be **GRANTED,** such that Plaintiffs' claims for injunctive and declaratory relief concerning religious accommodation (as outlined on page 3 herein) be **DISMISSED,** and that any determination of damages under these claims be **STAYED** pending the resolution of Plaintiffs' religious accommodation claims in *Miller.* It is further **RECOMMENDED** that Plaintiffs' alleged non-religious accommodations claims be **DISMISSED** pursuant to Fed.R.Civ.P. 12(b)(6), and it is further **RECOMMENDED** that Plaintiffs' motions for partial summary judgment (Docs. 110, 115) and motion to appoint counsel and to certify class (Doc 112) be **DENIED.**

October 1, 2008.

## ATTACHMENT

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation within **TEN DAYS** after the date this Report and Recommendation is stamped "filed" by the Clerk of Court. This period may be extended by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections. A party may respond to an opponent's objections within **TEN DAYS** after being served with a copy those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

**REPORT AND RECOMMENDATION**[1] **THAT (1) PLAINTIFF BLANKENSHIP'S MOTION FOR INJUNCTIVE RELIEF (Doc. 81) BE DENIED; (2) PLAINTIFF BLANKENSHIP'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT (Docs. 82, 96) BE DENIED; (3) BRIAN TIMMS' MOTIONS TO JOIN (Docs. 83, 97) BE DENIED; AND (4) DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 124) BE GRANTED**

TIMOTHY S. BLACK, United States Magistrate Judge.

Plaintiff, an inmate currently incarcerated at Ross Correctional Institution,[2] brings this action pursuant to 42 U.S.C. § 1983, seeking injunctive, declaratory, and monetary relief against several state prison officials and employees for alleged violations of his rights under the First, Eighth, and Fourteenth Amendments.[3] The remaining Defendants, and their positions of employ-

---

1. Attached hereto is a NOTICE to the parties regarding *objections to this Report and Recommendation.*

2. However, during the time in question for his denial of exercise claim, he was incarcerated at Lebanon Correctional Institution (LeCI).

3. Certain defendants have been previously dismissed and/or were never properly served. Defendant Delgado was dismissed by the Court (Doc. 13), and he is now deceased. Reginald Wilkinson was never properly served, (Summons returned Unexecuted, Doc. 53), and he retired from the Department of Rehabilitation and Corrections (ODRC) in April 2006. April Barr was dismissed by the Court (Order, Doc. 13), and she is the Institutional Inspector at LeCI. Cindy Lawson was never properly served (Summons returned Unexecuted, Doc. 54), and she is no longer working with ODRC.

ment with the Ohio Department of Rehabilitation and Corrections (ODRC) during the time in question, are: Ernie Moore, Warden of LeCI; J. Mullins, Mail Room Supervisor at Warren Correctional Institution; Chris Case, Investigator at LeCI; C. Benton, Chaplain at LeCI; Richard Timler, Mail Room Supervisor at LeCI; B. Bailey, Librarian at LeCI; and Gary Sims, Religious Services Administrator for ODRC.

Now before the Court are Plaintiff Blankenship's motion for a preliminary injunction (Doc. 81), "Motion For Summary Judgment on Claim For In Cell Possession of Legal Materials" (Doc. 82), and "Motion For Summary Judgment on Claim of Denial of Exercise" (Doc. 96), and the parties responsive memoranda (Docs. 84–86, 124, 145). Also before the Court are inmate Brian Timms' motions for joinder (Docs. 83, 97), Defendants' motion for partial summary judgment on Plaintiff Blankenship's denial of exercise claim (Doc. 124) and the parties responsive memoranda (Docs. 109, 113, 126, 145). Each motion will be addressed in turn.

### I. Plaintiff's motion for a Preliminary Injunction (Doc. 81)

▮▮▮▮ Plaintiff Blankenship seeks an injunction requiring Defendants to permit him to possess excess legal materials within his cell. (*See* Doc. 81.) In determining whether to issue a temporary restraining order, this Court must balance the following factors:

1. Whether the party seeking the injunction has shown a substantial likelihood of success on the merits;

2. Whether the party seeking the injunction will suffer irreparable harm absent the injunction;

3. Whether an injunction will cause others to suffer substantial harm; and

4. Whether the public interest would be served by a preliminary injunction.

*U.S. v. Bayshore Associates, Inc.,* 934 F.2d 1391, 1398 (6th Cir.1991); *In Re King World Productions, Inc.,* 898 F.2d 56, 59 (6th Cir.1990); *Project Vote! v. Ohio Bureau of Employment Services,* 578 F.Supp. 7, 9 (S.D.Ohio 1982) (Spiegel, J.).

▮▮▮▮ The undersigned finds that Plaintiff has not alleged facts sufficient to warrant a preliminary injunction. Plaintiff has not alleged facts indicating a substantial likelihood of success on the merits of his constitutional claims, and he has not alleged facts showing that he will suffer irreparable harm absent a preliminary injunction. Monetary or economic harm by itself does not constitute irreparable harm. *State of Ohio ex rel. Celebrezze v. N.R.C.,* 812 F.2d 288, 290 (6th Cir.1987).

An injunction is also not warranted in this case because the purpose of a preliminary injunction, to preserve the *status quo* until a trial on the merits can be held, *see Martin,* 924 F.2d at 102, would not be served. The present *status quo* in this case is, according to Plaintiff, that he has suffered numerous violations of his constitutional rights. The remedy Plaintiff presently seeks is more than an injunction maintaining the *status quo;* he seeks an Order from this Court requiring defendants to affirmatively correct constitutional deficiencies yet to be proven. Such affirmative relief is generally beyond the scope and purpose of preliminary injunctive relief. *Id.*

Accordingly, the undersigned recommends that Plaintiff's motion for injunctive relief (Doc. 81) be denied.

### II. The Parties' Motions for Summary Judgment

#### STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to inter-

rogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which might affect the outcome of the action. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Where the movant has made a properly-supported summary judgment motion, the opposing party cannot simply rely upon the allegations or denials of his pleadings. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. However, a court need not give credence to "mere allegations" nor draw inferences where they are implausible or not supported by "specific facts." *Id.* at 249, 106 S.Ct. 2505; *see also Mitchell v. Toledo Hosp.,* 964 F.2d 577, 585 (6th Cir.1992). Furthermore, "self-serving affidavits, alone, are not enough to create an issue of fact sufficient to survive summary judgment." *Wolfe v. Village of Brice,* 37 F.Supp.2d 1021, 1026 (S.D.Ohio 1999) (citing *Anderson,* 477 U.S. 242, 106 S.Ct. 2505). Thus, the law is clear: conclusory allegations are not sufficient to defeat a properly supported summary judgment motion. *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir.1990).

Finally, while the pleadings of *pro se* litigants are liberally construed, the fact that a plaintiff is "proceeding *pro se* does not otherwise relieve [him] from the usual requirements of summary judgment." *Bussey v. Phillips,* 419 F.Supp.2d 569 (S.D.N.Y.2006) (quoting *Fitzpatrick v. N.Y. Cornell Hosp.,* 2003 WL 102853, at *5 (S.D.N.Y. Jan.9, 2003)).

### A. Plaintiff's Motion for Partial Summary Judgment (Docs. 82)

Plaintiff Blankenship's first motion requests partial summary judgment in order to prevent RCI employees from enforcing the ODRC excess legal materials policy (59–LEG–01). Blankenship alleges that a prison regulation restricting access to excess legal materials once every 30 days is unconstitutional. (*Id.* at p. 1) Pursuant to policy, Blankenship must store his excess legal materials in a legal locker box in a vault, and he has access to these materials at least once every 30 days, and more often if necessary. (Doc. 84, Declaration of Cassie Johnson, Ex. A.) However, Blankenship seeks to store his excess legal materials in his cell the way that a television, radio, guitar, or other exempt property items are allowed to be stored. (Doc. 82, p. 2.)

Blankenship argues that 59–LEG–01 is unfair considering that ODRC policies 61–PRP–01 VI(A)(3) and OAC 5120–9–33(B) authorize exemptions to the 2.4 cubic foot in-cell property storage limits for some property such as televisions, radios, fans, shoes, and guitars. (*Id.*) He states that he needs to be free from the excess legal materials policy because he is a plaintiff in this case, and in *Eberle v. Wilkinson,* 2:03–cv–272, and *Miller v. Wilkinson,* 2:98–cv–275, and because he is helping another inmate, Brian Mann, with *Mann v. Wilkinson,* 2:00–cv–706, Mr. Mann's lawsuit. (*Id.*) Blankenship states that he has a right to possess all his legal materials in his cell because he is hindered in his legal research and in his ability to litigate his own cases and Mr. Mann's case. (*Id.*)

Defendants maintain, however, that there are genuine issues of fact as to whether Blankenship is denied access to the court as a result of the excess legal materials policy, and as to whether the regulation is reasonably related to a legitimate penological interest. The undersigned agrees.

Moreover, in order for Blankenship to succeed on his claim of violation of his constitutional right to access to courts, he must demonstrate an actual injury. *Lewis v. Casey,* 518 U.S. 343, 350–352, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Here, Blankenship has failed to allege that his access to court is impinged upon by the regulation on excess legal materials. Plaintiff's motion simply asserts that under the excess legal material regulation, his access to legal materials is a hindrance to his litigation.

In the absence of specifying how his constitutional rights have been impinged by the excess legal materials regulation, Blankenship cannot show that he is entitled to judgment as a matter of law with respect to his alleged constitutional claim for in cell possession of his excess legal materials. Thus, Plaintiff has failed to establish that such alleged hindrance in accessing his legal materials from his vault lock box has caused actual harm and/or violated his constitutional rights. He is in fact permitted to access his legal locker box, in addition to his cell locker box, when necessary for litigation. (Doc. 84, Ex. A, Johnson Aff. at ¶¶ 8–11.)

Moreover, Blankenship is represented by counsel in two out of three of his cases, and his ability to pursue litigation in these cases is not hindered by the storage of his excess legal materials in a vault. Furthermore, pursuant to ODRC policy, Blankenship is not permitted to possess the legal materials of another inmate, and his jailhouse lawyering is not a reason for violating the excess legal material policy. (Doc. 84, Ex. A, Addendum B, p. 5 at Section F.2.d.; 61–PRP–01, attached as Ex. B.) As noted above, Plaintiff merely demonstrates that he is annoyed by the current policy and feels inconvenienced. Thus, he fails to demonstrate any actual harm related to his current level of access to his legal materials.

Accordingly, upon careful review, the undersigned recommends that Plaintiff's motion for partial summary judgment (Doc. 82) should be denied.

> B. *The parties' cross motions for summary judgment with respect to Plaintiff's denial of exercise claim (Docs. 96, 124)*

Blankenship is also seeking summary judgment against prison officials for violating his rights under the Eighth Amendment based upon the alleged denial of exercise and recreation. Blankenship alleges that in 2004 he was required to remain in his cell and denied any form of recreation without medical justification for more than three months pursuant to a practice at LeCI prohibiting any form of exercise or recreation to inmates on "medical idle" status. (Screening Order, Doc. 13 at p. 3).

Defendants, however, assert that they are entitled to summary judgment with respect to this claim because Blankenship has failed to state a claim for an Eighth Amendment violation under 42 U.S.C. § 1983. Defendants further assert that they are entitled to qualified immunity. The undersigned agrees, and for the reasons that follow, recommends that Defendants' motion for partial summary judgment should be granted.

i.

The relevant undisputed facts, as contained in the Declaration of Amy Weiss,

LeCI's Health Care Administrator ("HCA"), are as follows: [4]

The medical lay-in practice involves a medical determination that an inmate is unfit for activities including, but not limited to, work (employment) and exercise or recreation. (*See* Doc. 124, Ex. A, Declaration of Amy Weiss, ¶ 7). A doctor must order the restriction. *Id.* However, a nurse may impose a temporary three day medical restriction if necessary prior to the inmate being seen by a doctor. *Id.*

Pursuant to ODRC Protocol B–19, medical restrictions, such as no recreation or exercise, are implemented to address health problems that are likely to cause severe or life threatening consequences if the restriction is not implemented immediately. (Doc. 124, Ex. B). Moreover, medical restrictions are also imposed when patients present to the infirmary with illness or injury that requires the patient to be restricted from activity that will aggravate or impede recover. (Weiss Declaration, ¶ 9.)

Inmates on medical lay-ins remain in their current cell placement throughout the duration of their medical lay-in. (*Id.* at ¶ 10.) They are identified by a red medical bracelet, a "red band," that is placed around their wrist much like a medical bracelet that is commonly used at most hospital facilities outside of prisons. *Id.* An inmate wearing a red band will not be permitted or forced to work at his job or to exercise or recreate. *Id.* The inmate will wear the red band for the duration of the medical lay-in ordered by the doctor. The red band is removed by medical staff upon the expiration of the medical restriction order. *Id.*

When the medical restriction expires, it is the responsibility of the inmate to come to the infirmary to either have the red band removed or request an appointment for the physician to re-evaluate the need to continue the restriction. (*Id.* at ¶ 11.) Only medical staff have the authority to remove a red band, and therefore the corresponding medical restrictions, from an inmate. (*Id.* at ¶ 12.) The practice at LeCI, as stated above, is for the inmate to return to the clinic on his own initiative upon the expiration of the medical restriction order. *Id.* The date of the medical restriction order is printed on the red band bracelet so the inmate is aware of when he should report to the clinic. *Id.*

Inmate Blankenship's medical records reveal that on June 20, 2004, Blankenship indicated to a nurse at LeCI that he started a religious hunger strike on June 19, 2004, and he therefore requested a medical lay-in. (*Id.* at ¶ 14.) The nurse scheduled an appointment with the doctor. *Id; (See also* Doc. 124, Interdisciplinary Progress Notes ("IPN") Ex A–09; Health Services Request, Ex A–17).

On June 22, 2004, Dr. James McWeeney placed Blankenship on a three week long medical lay-in as a result of Blankenship's religiously motivated hunger strike. (*Id.* at ¶ 15.) The medical lay-in was ordered to last from Tuesday, June 22, 2004 through Tuesday, July 13, 2004. *Id.; (See also* Doc. 124, IPN, A–09; Doctor Order, A–07; Medical Restriction Statement, A–13).

On June 25, 2004, medical staff at LeCI had a meeting concerning Blankenship's hunger strikes and determined that staff wished to pursue evaluation for Blankenship at the Ohio State University Medical

---

4. Weiss is currently employed at LeCI in Lebanon, Ohio as Health Care Administrator ("HCA"). (Doc. 124, Ex. A, Declaration of Amy Weiss, ¶ 2.) Weiss has been employed with the ODRC since March 1997, and in her current position as HCA since October 2006. During March 1997 though October 2006, Weiss held the position of Nurse at LeCI. *Id.*

Center. (*Id.* at ¶ 16.) It was also recorded that Blankenship indicated he would refuse treatment. Subsequently, LeCI medical staff contacted Dr. Akusoba at the Corrections Medical Center ("CMC"). Arrangements were made for transfer, and the patient remained in the care of CMC until June 30, 2004. *Id.;(see also* Doc. 124, ODRC's Departmental Offender Tracking System ("DOTS") printout, attached as Exs. A–21 through A–23, at A–22; Problem–Oriented Progress Notes ("POPN"), A–11).

On July 7, 2004, medical staff received inmate Blankenship's Health Services Request for an extension of his medical lay-in due to his July 6, 2004 renewed religious fast. (*Id.* at ¶ 17.) (Health Services Request, A–18).

On July 12, 2004, medical staff received a second Health Services Request from Blankenship for an extension of his medical lay-in due to his renewed religious fast. (*Id.* at ¶ 18.); (*See also* Doc. 124, Health Services Request, Ex. A–19). Also, on July 12, 2004, Blankenship was admitted to the infirmary for 24 hour nursing care as a result of his ongoing religious fast. (*Id.* at ¶ 19); (*See also* Doc. 124, DOTS, Exs. A–22; POPN, A–11).

On July 14, 2004, Blankenship was transferred to CMC to be treated for his hunger strike. (*Id.* at ¶ 20.); (*See also* Doc. 124, Doctor Order, Ex. A–08, POPN, A–12, DOTS, A–22.) Blankenship remained in the care of medical professionals at CMC until July 20, 2004, at which time he returned to LeCI. (*Id.* at ¶ 21);(*See also* 124, DOTS, Exs. A–22; POPN, A–12).

After July 20, 2004, the first time Blankenship brought his complaint about his red band/medical cell isolation/medical lay-in to the attention to the proper authorities was on September 14, 2008 when he filed an informal complaint. (Weiss Declaration at ¶ 22.) That same day, his red band was discontinued by the Health Care Administrator, Cindy Lawson. *Id.* After September 14, 2004, Blankenship was re-eligible for normal activity including work and exercise. (*Id.* at ¶ 24.)

ii.

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* In establishing conditions of confinement, prison officials violate a prisoner's Eighth Amendment rights when they manifest an unnecessary and wanton disregard for any resulting allegedly unconstitutional prison conditions. *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 2326, 115 L.Ed.2d 271 (1991); *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986).

"[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (citing *Rhodes,* 452 U.S. at 347, 101 S.Ct. 2392). *See also Thompson v. County of Medina, Ohio,* 29 F.3d 238, 242 (6th Cir. 1994). The allegedly deficient conditions of confinement must constitute a "serious deprivation of basic human needs" such as food, medical care, or sanitation. *Rhodes,* 452 U.S. at 347–48, 101 S.Ct. 2392. "[P]rison officials must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan,* 511 U.S.

825, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994) (citing *Hudson v. Palmer,* 468 U.S. 517, 526–27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)).

■ The Sixth Circuit Court of Appeals has recognized the need for prisoners to have access to exercise or recreation. *Patterson v. Mintzes,* 717 F.2d 284, 289 (6th Cir.1983). In order to hold prison officials liable for a deprivation of this need, however, a showing must be made that prison officials acted with deliberate indifference. *See Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (holding that an inmate must show that a prison official was "subjectively aware" of a substantial risk of harm to the inmate to establish that the official was "deliberately indifferent" to that risk in violation of the Eighth Amendment).

iii.

Here, Plaintiff has failed to provide any evidence or argument establishing that the Defendants were deliberately indifferent to his health or safety. As noted above, it was Blankenship's responsibility to return to medical upon expiration of his red band to have it removed. (*See* Weiss Declaration, Exhibit A, at ¶¶ 11–12, and ¶¶ 22–23). However, he never reported to the medical department for removal of his red band after his red band restriction expired on July 13, 2004.

Notably, on July 7th and 12th, 2004, LeCI medical staff received Blankenship's requests for an extension of his medical lay-in due to a renewed religious fast. (*Id.* at ¶ 17). On July 12, 2004, he was admitted to the infirmary for his religious hunger strike. (*Id.* at ¶ 19). On July 20, 2004, Blankenship was transferred to CMC for hunger strike cell placement. Blankenship failed to report to medical staff for the removal of his red band upon his return from CMC's 24 hour medical care. (*Id.*). It was not until September 14, 2004 that Blankenship finally communicated to medical staff his desire to be removed from medical cell isolation to any medical staff.

Thus, Defendants assert that any failure on the part of the prison physician to order removal of the red band was at most inadvertent oversight and not deliberate indifference. *See Farmer,* 511 U.S. at 838, 114 S.Ct. 1970 (an inadvertent oversight cannot support liability under the Eighth Amendment.) The undersigned agrees, and recommends that the Court grant Defendants' motion for [partial] summary judgment as Defendants are entitled to judgment as a matter of law on Blankenship's Eighth Amendment claim.

Furthermore, Defendants are entitled to qualified immunity because Plaintiff has not shown either a constitutional violation nor that what Defendants did was "objectively unreasonable" in light of clearly established law. *See Dickerson v. McClellan,* 101 F.3d 1151, 1157–1158 (6th Cir. 1996); *see also McCloud v. Testa,* 97 F.3d 1536, 1542 (6th Cir.1996) (finding that the burden of disproving qualified immunity rests with the plaintiff).

Accordingly, Defendants have met their burden of showing the absence of genuine disputes over facts which, under the substantive law governing the claims, might affect the outcome of the action. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. In light of Plaintiff's failure to designate specific facts in dispute, summary judgment in favor of Defendants on Blankenship's Eighth Amendment claim is proper.

*III. Brian Timms' Motions to Join in Blankenship's Denial of Exercise Claim (Docs. 83, 97)*

Brian Timms, an inmate at LeCI, seeks to join as a Plaintiff on Blankenship's deni-

al of recreation and exercise claim pursuant to Fed. R. Civ.P. 20(a). (*See* Docs. 83, 97.) In the event summary judgment is entered in favor of Defendants on Blankenship's denial of exercise claim, as recommended above, Timms' motions may be denied as moot. If addressed on the merits, the motions should be denied because Timms fails to state a claim arising out of the same transaction or occurrence as Plaintiff Blankenship's claim.

Federal Rule of Civil Procedure 20(a)(1) provides in pertinent part:

Persons may join in one action as plaintiffs if:

(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B) any question of law or fact common to all plaintiffs will arise in the action.

Rule 20(a)(1) does not permit a party to join as a plaintiff for unrelated claims, and this Court has adopted a case-by-case approach to determining whether a particular factual situation constitutes a single transaction and occurrence. *Scott v. Fairbanks Capital Corp.*, 284 F.Supp.2d 880, 888 (S.D.Ohio 2003). The terms "transaction or occurrence" are given broad and liberal interpretation. *Lasa Per L'Industria Del Marmo Societa Per Azioni v. Alexander*, 414 F.2d 143, 147 (6th Cir.1969). However, joinder has been denied if the factual circumstances are not sufficiently similar to make a single trial desirable for the administration of their claims. *Scott v. Fairbanks Capital Corp.*, 284 F.Supp.2d 880, 888 (citations omitted); *see McCormick v. Mays*, 124 F.R.D. 164 (S.D.Ohio 1988) ("Mere factual similarity is not sufficient to compel joinder.").

On September 12, 2005, Timms asserts that his treating physician designated him as medically idle, he was reevaluated a week later (although whether he was declared medically idle at this time is unclear from his motion), and then on September 28, 2005, his physician ordered a "medical lay-in" for 30 days. (Doc. 97, Timms' Motion for Joinder at p. 2) Timms claims that he was prevented from exercising during the time periods the physician ordered a "medical lay-in" due to his medical condition. Timms seeks declaratory and injunctive relief (for himself and any inmate on medical idle status) declaring the medical idle policy unconstitutional, and he seeks monetary relief for his personal denial of recreation and exercise during the time that his physician placed him on medical idle status.

Here, joinder would be improper because the claims involve two separate and distinct incidents and two different persons. Blankenship's claim arises out of an incident in 2004 during which he was "denied any and all forms of recreation or exercise for more than three months without justification while on a two week medical idle status." (Doc. 96, at p. 1). Plaintiff Blankenship alleges that his injury (denial of recreation) arose out of an improper operation of the "medical lay-in" practice. On the other hand, Timms alleges that a year later, in 2005, he was denied recreation or exercise while he was properly placed on a "medical lay-in." (Doc. 97, p. 2). Thus, the difference between parties, time frames and circumstances makes joinder improper under Rule 20.

Accordingly, the undersigned recommends that Timms' motions to join be denied.

## CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED THAT:**

1. Plaintiff's motion for a preliminary injunction (Doc. 81) and motions for

partial summary judgment (Docs. 82, 96) should be **DENIED;** and

2. Brian Timms' motions to join (Docs. 83, 97) should be **DENIED;** and

3. Defendants' motion for partial summary judgment on plaintiff's denial of exercise claim (Doc. 124) should be **GRANTED.**

It is further **RECOMMENDED** that the Court certify that any appeal would not be taken in good faith. *See* 28 U.S.C. § 1915(a)(3); *McGore v. Wrigglesworth,* 114 F.3d 601, 610–11 (6th Cir.1997); *Kincade v. Sparkman,* 117 F.3d 949 (6th Cir. 1997).

October 15, 2008.

### ATTACHMENT

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation within **TEN DAYS** after the date this Report and Recommendation is stamped "filed" by the Clerk of Court. This period may be extended by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections. A party may respond to an opponent's objections within **TEN DAYS** after being served with a copy those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).